# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## WEST PALM BEACH DIVISION

### CASE NO.:

**RUSSELL HUGH COOPER,**

      **Plaintiff,**

**v.**

**CITY OF BOYNTON BEACH, a Florida**
**municipal corporation;**
**WILLIAM MUHLEISEN, JR., individually;**
**CYNTHIA RIVERA, individually;**
**MARCO A. VILLARI, individually;**
**ARMOR CORRECTIONAL HEALTH SERVICES,**
**INC., a Florida for-profit corporation;**
**RIC L. BRADSHAW, in his official capacity as**
**Sheriff of Palm Beach County, Florida;**
**GEO CARE, LLC, n/k/a CORRECT CARE, LLC,**
**a Florida limited liability company;**
**SUSEN CARTER-NEALY, A.R.N.P., individually;**
**MICHELENE BENJAMIN, R.N., individually;**
**GINA PELLETTERE, L.P.N., individually;**
**ODILE SCHWAB-MOLINA, R.N., individually;**
**DARLYNE BRUNEAU, R.N., individually;**
**JENNIFER PIVA, R.N., individually;**
**PIERRE DORSAINVIL, M.D., individually;**
**PATRICIA SALMON, R.N., individually;**
**ARMOR agents and employees,**
**JANE DOE and JOHN DOE; and**
**ADAM WHITE, Ph.D.,**

      **Defendants.**

_____/

### COMPLAINT

The Plaintiff, RUSSELL HUGH COOPER, sues Defendants, and states:

1.    This is a civil action seeking money damages against Defendants for committing acts, under color of law, which deprived Plaintiff Russell Cooper of rights secured under the Constitution, other laws of the United States, and laws of the state of Florida.

2.    Through this action Plaintiff seeks money damages to compensate him for the cascade of destructive events, acts, and failures to act that began when Boynton Beach police officers used excessive force against him, continued through his pre-trial detention at the Palm Beach County Main Detention Center, and culminated in the surgical amputation of his left leg and concomitant loss of independence. Although no amount of money will restore the Plaintiff's physical wholeness or return him to his prior level of independent living, Defendants must be made to answer for their failures to interact with Plaintiff consistent with his constitutional rights and with the dignity due to any human.

3.    Plaintiff also seeks award of punitive damages for those causes of action that allow such damages, seeks award of attorney fees and costs, and demands trial by jury on all issues so triable.

4.    Plaintiff's federal claims arise pursuant to 42 U.S.C. §§1983 and 1988, for violations of his rights protected by the Fourth and Fourteenth Amendments to the United States Constitution; and 42 U.S.C. § 12101(b)(1), *et seq*., for violations of his rights under the Americans with Disabilities Act; and 29 U.S.C. § 794 for violations of

his rights under the Rehabilitation Act. This Court has jurisdiction pursuant to 28 U.S.C. §1331 and §1343.

5.      Plaintiff's state law claims arise pursuant to § 415.101, *et seq., Fla. Stat.*, for violations of his rights under the Adult Protective Services Act, and pursuant to common law for negligence and infliction of intentional and negligent emotional distress. Plaintiff invokes the supplemental jurisdiction of the United States District Court to hear those pendent tort and statutory claims arising under state law, pursuant to 28 U.S.C. § 1367(a).

6.      Venue in this judicial district is proper pursuant to 28 U.S.C. §1391 because the Defendants are subject to personal jurisdiction in Palm Beach County, and all events giving rise to Plaintiff's claims occurred in Palm Beach County, which is within the jurisdiction of the United States District Court, in and for the Southern District of Florida.

7.      Plaintiffs have fully complied with all conditions precedent to bringing this action. On November 5, 2014, Plaintiff served notice of his claims, in accordance with §768.28, *Fla. Stat.*, on Ric Bradshaw as Sheriff of Palm Beach County Sheriff's Office, and on Jeff Atwater, CFO, at the Florida Department of Financial Services. No resolution of the claims was reached within six months after the date the notice was served.

## THE PARTIES

8.      Plaintiff, RUSSELL HUGH COOPER is, and was at all times material to this action, a resident of Palm Beach County, Florida. He is over the age of 18 years and is

otherwise *sui juris*. He is father to five and grandfather to ten. He is retired from employment as Director of Safety with the State of Michigan Department of Labor. Mr. Cooper also has served his community as a member of the armed services, as an adult foster care provider, and as a Veteran Michigan National Guardsman. For years Mr. Cooper met the challenges of debilitating disabilities including his profound hearing loss and severe back and joint impairments. Prior to May 2, 2014, Mr. Cooper obtained a cochlear implant to restore his ability to hear, and underwent surgeries on his spine and joints, which allowed him ambulate with the use of a walker.

9.      Defendant CITY OF BOYNTON BEACH is a municipal corporation, and is capable of being sued.

10.     At all material times, Defendant WILLIAM MUHLEISEN, JR., was an employee, law enforcement officer, and agent of the City of Boynton Beach, was acting under color of law, and was over the age of 18 years and otherwise *sui juris*. Plaintiff sues Muhleisen in his individual capacity. In connection with the acts, practices, and violations described below, Defendant Muhleisen directly or indirectly violated Plaintiff Cooper's constitutional and other legal rights.

11.     At all material times, Defendant CYNTHIA RIVERA was an employee, law enforcement officer, and agent of the City of Boynton Beach, was acting under color of law, and was over the age of 18 years and otherwise *sui juris*. Plaintiff sues Rivera in her individual capacity. In connection with the acts, practices and violations described

below, Defendant Rivera directly or indirectly violated Plaintiff Cooper's constitutional and other legal rights.

12. At all material times, Defendant MARCO A. VILLARI was an employee, law enforcement officer, and agent of the City of Boynton Beach, was acting under the direction and control of the City, was acting under color of state law, and was over the age of 18 years and otherwise *sui juris*. Plaintiff sues Villari in his individual capacity. In connection with the acts, practices and violations described below, Defendant Villari directly or indirectly violated Plaintiff Cooper's constitutional and other legal rights.

13. Defendant ARMOR CORRECTIONAL HEALTH SERVICES, INC., is a for-profit corporation, organized and existing under the laws of the State of Florida, conducting business in Palm Beach County, Florida. By virtue of a contract with the Palm Beach County Sheriff's Office and Defendant RIC L. BRADSHAW, Armor is, and was at the relevant time, responsible for providing comprehensive health care services to inmates housed at the Palm Beach County Main Detention Center in West Palm Beach, Florida, where Plaintiff was detained following his arrest on May 2, 2014, through May 15, 2014, when Plaintiff was released on bond. Armor delivered those health care services through its agents and employees, including those identified in this action.

14. Defendant RIC L. BRADSHAW is, and was at the relevant time, the elected Sheriff of Palm Beach County. As such, Defendant is the chief correctional officer of the Palm Beach County correctional system and is responsible for operating and maintaining the county detention facilities.

15.     Defendant GEO CARE, LLC, now known as CORRECT CARE, LLC (referred to as Geo for consistency with references in medical records), is a Florida limited liability company. At all relevant times, Geo was responsible for providing mental health care services to and evaluations of inmates housed at the Main Detention Center in West Palm Beach, Florida, where Plaintiff was detained following his arrest on May 2, 2014. Upon information and belief, Geo is or was a subcontractor of Armor.

16.     Defendants SUSEN CARTER-NEALY, A.R.N.P., MICHELENE BENJAMIN, R.N., GINA PELLETTERE, L.P.N., ODILE SCHWAB-MOLINA, R.N., DARLYNE BRUNEAU, R.N., JENNIFER PIVA, R.N., PIERRE DORSAINVIL, M.D., PATRICIA SALMON, R.N., and ARMOR agents and employees JANE DOE and JOHN DOE, were, at all times material, duly appointed attending health care providers employed by and serving under Defendant ARMOR, as agents of PBSO. The unknown Defendants John Doe and Jane Doe will be specified at a reasonable time within the future when discovered. Plaintiff sues each of these Defendants in their individual capacities.

17.     Defendant ADAM WHITE, Ph.D., was employed by and serving under Defendant GEO at the relevant time. Plaintiff sues Dr. White in his individual capacity.

**FACTS**

18.     Plaintiff Russell Hugh Cooper was arrested by Boynton Beach police officers on May 2, 2014, at a PNC Bank in Boynton Beach, Florida.

19.     Earlier in the day, Plaintiff had driven to an auto repair facility to have minor work performed on his car. When the work was complete, Plaintiff attempted to

pay the $128 bill using a debit card linked to his PNC account. When the card was declined, a mechanic employed by the facility drove Plaintiff to his bank as a courtesy so Plaintiff could address the problem with the bank and withdraw cash to pay the auto repair facility.

20.     Once at the bank, however, the branch manager informed Plaintiff that his account was closed because of a lack funds, and that his Social Security payment, which was routinely deposited in the now-closed account, had been returned to the Social Security Administration.

21.     Plaintiff, being informed for the first time of this development, and with his car at a repair facility, and a mechanic waiting for him outside the bank, and having been told he had no money to pay the auto repair bill or to pay for anything else, became distraught.

22.     Plaintiff produced a common pocketknife and demanded the bank branch manager give him sufficient funds to pay the auto repair bill. A teller, under direction of the manager, handed $130 to Plaintiff.

23.     While this was transpiring, another bank employee called 911.

24.     Plaintiff took the cash and turned and made his way slowly, leaning on his walker for support, across the lobby toward the exit, instructing the manager to accompany him.

25.     Once outside, Plaintiff encountered the Defendants Muhleisen, Rivera, and Villari, and the bank manager went back inside the bank.

26.     Despite Plaintiff's obvious advanced age and physical disability, Defendants Muhleisen, Rivera, and Villari worked together as a unit to distract Plaintiff, not so that one of the Defendants could take the pocketknife out of Plaintiff's hand, but so that Villari could deploy his M-26 Taser weapon into Plaintiff's back.

27.     After Defendant Villari discharged his M-26 Taser three times into Plaintiff's back, causing Plaintiff to collapse onto the ground and sustain injuries, Plaintiff was arrested and then incarcerated at the Palm Beach County Sheriff's Office Main Detention Center in West Palm Beach from May 2 to May 15, 2014.

28.     Immediately before his arrest, Plaintiff Cooper was 77 years of age, resided in an assisted living facility, ambulated with the use of a walker, and was able to hear with the use of the cochlear implant.

29.     During his confinement at the Main Detention Center, Plaintiff's condition was allowed to deteriorate to the point that, after his release on bond, he was unable to return to the assisted living facility at which he had been residing; instead, he was admitted to a nursing home where he would be provided with more attentive care.

30.     Before being Tasered three times, Plaintiff's cochlear implant was fully functional and he could communicate with others and others could communicate with him. Upon being Tasered, Plaintiff's cochlear implant was rendered non-functioning, making effective communication with others extraordinarily difficult throughout his pre-trial detention.

31.     After being booked into the Main Detention Center, Plaintiff's walker was taken from him and not returned to him until his release, rendering him unable to ambulate; instead, Plaintiff was forced to crawl or pull his 77 year-old, disabled body across the jail cell floor to get to and from any meal, to use the toilet, to attempt to communicate, to attempt to sleep.

32.     Two weeks after his release, Plaintiff was admitted to Wellington Regional Medical Center where he was treated for sepsis from a systemic infection with methicillin-resistant Staphylococcus aureus, more commonly known as MRSA.

33.     Six months after his arrest and confinement, the MRSA infection had not resolved, and Plaintiff was required to undergo surgical amputation of his left leg below the knee in order to save his life.

34.     Through the actions and inactions of the Defendants, Plaintiff Cooper's rights and protections under the Fourth Amendment, Fourteenth Amendment, Americans with Disabilities Act, and Adult Protective Services Act were violated, with devastating results and harm from which he will never recover.

35.     Plaintiff has agreed to pay his undersigned counsel a reasonable fee for services rendered.

## COUNT ONE
### Claim Against William Muhleisen, Jr., Cynthia Rivera, and Marco A. Villari, under 42 U.S.C. § 1983, for Excessive Use of Force in Violation of the Fourth and Fourteenth Amendments to the U.S. Constitution

36.     Plaintiff Cooper restates the allegations set forth at paragraphs 1 through 35 as if fully set forth here.

37.     Plaintiff brings this Count against Defendants WILLIAM MUHLEISEN, JR., CYNTHIA RIVERA, and MARCO A. VILLARI, in their individual capacities.

38.     Together, the Fourth and Fourteenth Amendments protect the rights of individuals, including Plaintiff Cooper, from the use of excessive or unreasonable force by law enforcement officers, including these Defendants. When those rights are violated, 42 U.S.C. § 1983 provides a remedy.

39.     The City of Boynton Beach Police Department has a written policy generally restricting the amount of force officers are to use to the minimal amount necessary to affect lawful objectives.

40.     The City of Boynton Beach Police Department has a written policy stating that, absent exigent circumstances, officers should not use their M-26 Taser against anyone whom the officer reasonably believes is elderly or disabled.

41.     On May 2, 2014, Plaintiff Cooper was both elderly and disabled, facts that were obvious and apparent to these Defendants.

42.     There were no exigent circumstances present, and this was not a rapidly-evolving situation in which Defendants were required to make split-second decisions.

43.     These Defendants, three of Boynton Beach's finest, violated Boynton Beach's written policies regarding use of force generally and use of Tasers specifically, when they declined to utilize available and less-harmful techniques to bring Plaintiff's conduct into compliance.

44.     Defendant officers, jointly and severally, violated Plaintiff's Fourth Amendment right to be free from the use of excessive force as follows:

a.     when they pointed their firearms at Plaintiff without first attempting to remove the pocketknife from his hand,

b.     when Defendant Villari deployed his M-26 Taser into Plaintiff's back, striking him and discharging an electrical current into his body, without first attempting to remove the pocketknife from his hand,

c.     when Defendants Muhleisen and Rivera failed to attempt to remove the pocketknife from Plaintiff's hand while the electric current was coursing through Plaintiff's body and causing him extreme pain, muscle contraction, and loss of function,

d.     when, after the electric current from the Taser dissipated, Defendants Muhleisen and Rivera remained standing in place with their firearms pointed at Plaintiff without attempting to remove the pocketknife from his hand,

e.     when Defendant Villari again deployed his M-26 Taser into Plaintiff's back, discharging an electrical current into his body a second time, without first attempting to remove the pocketknife from Plaintiff's hand,

f.     when Defendants Muhleisen and Rivera failed to attempt to remove the pocketknife from Plaintiff's hand while the electric current from the

second Tasing was coursing through Plaintiff's body and causing extreme pain, muscle contraction, and loss of function,

g.   when, after the electric current from the second Tasing dissipated, Defendants Muhleisen and Rivera remained standing in place with their firearms pointed at Plaintiff without attempting to remove the pocketknife from his hand,

h.   when Defendant Villari again deployed his M-26 Taser into Plaintiff's back, discharging an electrical current into his body a third time, without first attempting to remove the pocketknife from his hand, which finally caused Plaintiff to fall from his walker to his knees, arms, then forward striking his head on the pavement and sustaining injuries, including torn skin on both arms, his forehead, and his left knee.

45.   During one of the three Tasings, Plaintiff's cochlear implant was disabled, rendering him unable to hear anything, including instructions from the Defendants.

46.   As a result of the third Tasing, Plaintiff hit the ground and sustained multiple injuries to his skin which allowed opportunistic infection an entryway into his body.

47.   Considering Plaintiff's advanced age and obvious physical disability, the excessiveness of the force Defendants used against Plaintiff is so apparent under the circumstances that no reasonable officer could have believed in the lawfulness of Defendants' actions

48.     Plaintiff was arrested and transported to the Palm Beach County Main Detention Center in West Palm Beach, Florida, where he was detained until May 15, 2014.

49.     Two weeks after his release, Plaintiff was admitted to a hospital and diagnosed with sepsis from a systemic MRSA infection, which later required the surgical amputation of his lower left leg - below the abrasion on his knee sustained when he hit the ground upon being Tased - to save his life.

50.     As a direct and proximate result of the Defendants' use of excessive force, Plaintiff suffered physical injury, loss of the use of his cochlear implant and therefore loss of the ability to hear, mental anguish, and infection with methicillin-resistant Staphylococcus aureus (MRSA) which resulted in the surgical amputation of his left leg below the knee.

51.     Plaintiff seeks award of compensatory and punitive damages against these Defendants, and is entitled to recover reasonable attorney fees per 42 U.S.C. § 1988.

WHEREFORE, Plaintiff Russell Hugh Cooper requests judgment against Defendants for compensatory and punitive damages, attorney's fees and costs, any other and further relief that the Court deems just and proper, and requests trial by jury on all issues so triable.

## COUNT TWO
### Claim Against City of Boynton Beach under 42 U.S.C. § 1983 for Policy or Custom Concerning Excessive Use of Force in Violation of the Fourth and Fourteenth Amendments to the U.S. Constitution

52.     Plaintiff Cooper restates the allegations set forth at paragraphs 1 though 35 and 38 through 50 as if fully set forth here.

53.     Plaintiff brings this count against the City of Boynton Beach to recover damages he suffered as a result of its unconstitutional municipal policy that amounts to tacit approval and authorization for the use of excessive force against elderly and disabled people.

54.     Although City of Boynton Beach Police Department has a written policy against deploying Tasers on people who are elderly or disabled, the facts evince the existence of a custom or unwritten policy in favor of liberal use of Tasers even against people who are both elderly and disabled.

55.     Three Boynton officers were present on the scene and worked together to distract Plaintiff, not so that one of them could remove the pocketknife from Plaintiff's hand, but rather so that Villari could deploy his Taser into Plaintiff's back.

56.     One of the officers on the scene - Defendant Muhleisen - had attained the rank of Detective, and therefore was in a senior or supervisory position relative to Rivera and Villari, yet participated in the Taser use.

57.     Not one of the Defendant officers attempted to end the confrontation by taking the pocketknife or restraining Plaintiff at any time until Plaintiff was lying on the ground, banged up and bloodied and deaf, after having been Tased three times.

58.     Upon information and belief, there was no review or investigation by any employee or official at the City or in the City's police department into this use of force

against Plaintiff, no referral to any other agency for investigation, no determination concerning the propriety of this Taser deployment, and no discipline for violation of departmental policy.

59.     These acts and failures to act of Defendants Muhleisen, Rivera, and Villari, and the absence of oversight or review by anyone with authority at the City or in the City's police department, evince the existence of a custom or unwritten policy authorizing the liberal use of Tasers without regard to whether the target is elderly, disabled, or both.

60.     Plaintiff's rights under the Fourth and Fourteenth Amendments were violated, this custom or unwritten policy of the City of Boynton Beach was the moving force behind those violations, and Plaintiff was harmed severely as a result.

61.     Plaintiff seeks award of compensatory damages against Defendant City of Boynton Beach, and is entitled to recover reasonable attorney fees per 42 U.S.C. § 1988.

WHEREFORE, Plaintiff Russell Hugh Cooper requests judgment against Defendant for compensatory, attorney's fees and costs, any other and further relief that the Court deems just and proper, and requests trial by jury on all issues so triable.

**COUNT THREE**
**Claim Against Carter-Nealy, Benjamin, Pellettere, Schwab-Molina, Bruneau, Piva, Dorsainvil, Salmon, White, and Armor agents and employees Jane Doe and John Doe, under 42 U.S.C. § 1983, for violations of Due Process Protections in the Fourteenth Amendment to the U.S. Constitution**

62.     Plaintiff Cooper restates the allegations set forth at paragraphs 1 through 35 and 45 through 49 as if fully set forth here.

63.     Plaintiff brings this Count against Defendants Susen Carter-Nealy, A.R.N.P., Michelene Benjamin, R.N., Gina Pellettere, L.P.N., Odile Schwab-Molina, R.N., Darlyne Bruneau, R.N.,  Jennifer Piva, R.N., Pierre Dorsainvil, M.D., Patricia Salmon, R.N., Adam White, Ph.D., and Armor agents and employees Jane Doe and John Doe, in their individual capacities.

64.     After Plaintiff was arrested, he was transported to the Palm Beach County Main Detention Facility in West Palm Beach where he was held as a pre-trial detainee.

65.     The Due Process Clause of the Fourteenth Amendment protects pre-trial detainees from being held in and subjected to conditions that amount to punishment of the detainee. When a person, acting under color of law, disregards these protections, violates Due Process rights, and causes harm, 42 U.S.C. § 1983 provides a remedy.

66.     At the material times, these individual Defendants, except for Adam White, Ph.D., were employees and agents of Armor Correctional Health Services, Inc., and worked at the Main Detention Facility.

67.     At the material times, Defendant Adam White, Ph.D., was an employee and agent of Defendant GEO Care, LLC, n/k/a Correct Care, LLC, which, upon information and belief, was a subcontract of Defendant Armor, and provided mental health care to inmates at the Palm Beach County Main Detention Facility.

68.     These individual Defendants were responsible for screening incoming pre-trial detainees; assigning pretrial detainees to the appropriate housing level; evaluating the conditions, infirmities, and disabilities of detainees; assessing physical and mental

health and providing appropriate treatment; administering medications to detainees; assessing, implementing, and overseeing basic human needs of pre-trial detainees such as hearing, vision, and ambulation issues, toilet use and hygiene, nutrition; and the regular monitoring and ongoing assessment of the conditions of these detainees.

69.     Each of these individual Defendants had direct contact with Plaintiff, and had access to and contributed to his treatment records, and therefore participated in subjecting Plaintiff Cooper to conditions that amount to punishment during the two weeks he was detained, in violation of his Due Process rights under the Fourteenth Amendment.

70.     While these Defendants were acting under color of state law as employees or agents of either Defendant Armor or Defendant Geo, they  subjected Plaintiff to the deprivation of rights and privileges secured to him under the Fourteenth Amendment to the United States Constitution.  Those conditions included, but are not necessarily limited to:

       a.     depriving him of his walker for the entirety of his period of detention, despite knowing of his mobility impairment, leaving him to move around by crawling or pulling his body along the jail cell floor, and

       b.     stripping him of his clothing and requiring him to be dressed only in a paper gown and a so-called "suicide blanket," and

c.      allowing his hearing impairment to go completely unaddressed, rendering him unable to communicate effectively with others including these Defendants, and rendering him socially isolated, despite Defendants' knowledge of the impairment, and despite knowing that he was subjected to multiple "Tasings," and

d.      taking no steps to assess or evaluate a noted redness to Plaintiff's lower left leg, despite knowing of the tears to Plaintiff's skin and knowing that he was forced to crawl or pull himself along the jail cell floor, and

e.      failing to alert or notify any person holding a superior position or any governmental authority about the conditions in which Plaintiff was being held and subjected.

71.      Defendants breached their duty of care by failing to assess, medicate, treat, monitor Plaintiff, despite their notice and knowledge of his disabilities and other serious medical conditions when they caused Plaintiff to be punished, demeaned, suffer physical pain, extreme mental anguish and depression as a result of being forced to drag himself or crawl like an animal – for days while naked - across Defendants' jailhouse floor after having his property, his walker taken away, and then continuously deprived of that property for the duration of his incarceration from May 2, 1014 through May 15, 2014.

72.     Defendants also breached their duty of care when they caused Plaintiff to be punished, demeaned, suffer physical pain, extreme mental anguish and depression as a result of being forced to survive jail without aurally hearing, without being able to effectively communicate without a functioning cochlear implant continuously for the duration of his incarceration from May 2, 1014 through May 15, 2014.

73.     Defendants' actions and failures to act evinced deliberate indifference to Plaintiff's serious medical needs that resulted in great harm, including eventual surgical amputation of his lower left leg to resolve an intractable MRSA infection and save his life.

74.     The slow and painful injuries described above to the Plaintiff were reasonably foreseeable consequences of Defendants' deliberate indifference to their obligations to provide appropriate evaluation, assessment, treatment, basic human needs, care, sustenance, and medication for incarcerated detainees, like Plaintiff.

75.     As a direct and proximate result of the violations of Plaintiff's Constitutional rights by these Defendants, Plaintiff suffered physical pain and injury, infection, extreme mental anguish and depression, and eventual surgical amputation of his lower left leg.

76.     Plaintiff seeks award of compensatory and punitive damages against these Defendants, and is entitled to recover reasonable attorney fees per 42 U.S.C. § 1988.

WHEREFORE, Plaintiff Russell Hugh Cooper requests judgment against these Defendants for compensatory and punitive damages, attorney's fees and costs, any

other and further relief that the Court deems just and proper, and requests trial by jury on all issues so triable.

## COUNT FOUR
**Claim Against Carter-Nealy, Benjamin, Pellettere, Schwab-Molina, Bruneau, Piva, Dorsainvil, Salmon, White, and Armor agents and employees Jane Doe and John Doe, under Ch. 415, *Fla. Stat.*, for violations of the Adult Protective Services Act**

77.     Plaintiff Cooper restates the allegations set forth at paragraphs 1 through 35, 45 through 49, 63, 64, 66, and 67 as if fully set forth here.

78.     At all relevant times, Plaintiff was a vulnerable adult within the meaning of §415.102(28), *Fla. Stat.*, because he was elderly and his ability to perform the normal activities of daily living was impaired due to long-term physical disabilities or infirmities of aging, including hearing and mobility impairments.

79.     The Palm Beach County Main Detention Facility is a facility within the meaning of §415.102(9), *Fla. Stat.*, because Plaintiff resided there 24 hours a day for each day of his detention, for two weeks, from arrest until his release on bond.

80.     Each of these Defendants was a caregiver to Plaintiff within the meaning of §415.102(5), *Fla. Stat.*, because each was entrusted with or had assumed responsibility for frequent and regular care of Plaintiff during the entirety of Plaintiff's pre-trial detention.

81.     Each of these Defendants knew that Plaintiff was elderly and that he suffered from hearing and mobility impairments, but failed to provide the care, supervision, and services necessary to maintain Plaintiff's physical and mental health

which a prudent person would consider essential for the well-being of a vulnerable adult.

82.     Those failures included, but were not limited to, allowing him only a paper gown for clothing, allowing his hearing impairment to go unaddressed, and prohibiting him from using his walker which required him to crawl and pull his unclothed body along the jail cell floor.

83.     Those failures also constituted willful acts and omissions which caused or were likely to cause significant impairment to Plaintiff's physical, mental, or emotional health, especially because each Defendant knew of Plaintiff's open wounds, yet allowed him to crawl and pull his body along the jail cell floor where it was likely he would contract – and did contract – an infectious disease.

84.     Each of these Defendants also failed to make a reasonable effort to protect Plaintiff from abuse or neglect by others charged with caring for Plaintiff during his detention.

85.     Those failures, individually and collectively, produced or could reasonably be expected to result in serious physical or psychological injury or a substantial risk of death. In fact, Plaintiff's physical and mental condition deteriorated significantly during his detention, and he developed a MRSA infection during his detention that eventually required surgical amputation of his lower left leg to save his life.

86.     Plaintiff seeks award of actual, compensatory, and punitive damages, as well as attorney fees and costs, in accordance with §415.1111, *Fla. Stat.*

WHEREFORE, Plaintiff Russell Hugh Cooper demands judgment in his favor and against each of these Defendants for actual, compensatory, and punitive damages, and requests an award of reasonable attorney fees and costs, and all further relief that the Court deems just and proper.

**COUNT FIVE**
**Claim Against Armor Correctional Health Services, Inc., and Geo Care, LLC n/k/a/ Correct Care, LLC, under 42 U.S.C. § 1983, for violations of Due Process Protections in the Fourteenth Amendment to the U.S. Constitution**

87.     Plaintiff Cooper restates the allegations set forth at paragraphs 1 through 35, and 64 through 75 as if fully set forth here.

88.     Plaintiff sues Defendant Armor Correctional Health Services, Inc., and Geo Care, LLC n/k/a/ Correct Care, LLC (Geo) for violating his rights to Due Process under the Fourteenth Amendment.

89.     The acts and failures to act of Armor's or Geo's agents and employees evince the existence of a custom or policy of Armor or Geo that resulted in deliberate indifference to Plaintiff's constitutional rights and amounted to punishment in violation of the Due Process under the Fourteenth Amendment.

90.     Armor's or Geo's unconstitutional custom or policy is to maximize profits by delivering healthcare services that are so deficient in quality that they amount to cruel, unusual, and inhumane treatment, or punishment in violation of the Due Process Clause.

91.     Plaintiff's constitutional rights to Due Process under the Fourteenth Amendment were violated, Armor's or Geo's custom or policy was the moving force behind those violations, and Plaintiff was harmed severely as a result.

92.     Plaintiff seeks award of compensatory and punitive damages against this Defendant, and is entitled to recover reasonable attorney fees per 42 U.S.C. § 1988.

WHEREFORE, Plaintiff Russell Hugh Cooper requests judgment against Defendant Armor Correctional Health Services, Inc., and Geo Care, LLC n/k/a/ Correct Care, LLC, for compensatory and punitive damages, attorney's fees and costs, any other and further relief that the Court deems just and proper, and requests trial by jury on all issues so triable.

### COUNT SIX
### Claim Against Armor Correctional Health Services, Inc., for violations of the Americans with Disabilities Act and Rehabilitation Act

93.     Plaintiff Cooper restates the allegations set forth at paragraphs 1 through 35, and 64 through 75 as if fully set forth here.

94.     Plaintiff sues Defendant Armor Correctional Health Services, Inc., for violating his rights under the Americans with Disabilities Act (ADA) and Rehabilitation Act.

95.     The Federal Rehabilitation Act prohibits discrimination against an individual based on disability by an program or entity receiving federal funds. 29 U.S.C. §§ 794(a) and (b)(2)(B).

96.     Title II of the ADA prohibits disability-based discrimination by any public entity. 42 U.S.C. §§ 12131-12132.

97.     These disability anti-discrimination laws impost an affirmative duty on public entities to create policies or procedures to prevent discrimination based on disability.

98.     Plaintiff is, and was at the relevant times, a person with a disability within the meaning of Title II of the ADA and the Rehabilitation Act.

99.     Defendant Armor is a program or entity which receives federal financial assistance.

100.    Defendant Armor is a public entity as defined by Title II of the ADA.

101.    Defendant Armor's healthcare infirmary is a facility and its operation comprises a program and services for purposes of Title II of the ADA and the Rehabilitation Act.

102.    During his time of pre-trial detention, Plaintiff was qualified to participate in or receive the benefit of Armor's services, programs, or activities.

103.    Plaintiff was abused and neglected because of his hearing and mobility disabilities by Armor's agents and employees at the Palm Beach County Main Detention Center. Such abuse and neglect constitutes discrimination against an individual based on his disabilities in violation of Title II of the ADA and the Rehabilitation Act.

104.    This abuse and neglect denied Plaintiff the benefits of the services, programs, or activities of Armor's healthcare infirmary in violation of Title II of the ADA and the Rehabilitation Act.

105.    This abuse and neglect was carried out by Armor's agents and employees at the Palm Beach County Main Detention Center while acting within the scope of their employment by Armor. Defendant Armor is liable for the actions and inactions of its agents and employees when they violated Title II of the ADA and the Rehabilitation Act.

106.    Armor discriminated against Plaintiff by failing to provide a non-abusive, safe treatment environment, by failing to provide him with auditory care, and by failing to provide him with means to ambulate so that he would not have to crawl on the jail cell floor.

107.    Plaintiff was severely harmed as a result of Armor's discrimination.

108.    Plaintiff seeks award of compensatory damages against this Defendant, and recovery of reasonable attorney fees per 42 U.S.C. § 12205 and 29 U.S.C. § 794.

WHEREFORE, Plaintiff Russell Hugh Cooper requests judgment against Defendant Armor Correctional Health Services, Inc., for compensatory damages, attorney's fees and costs, any other and further relief that the Court deems just and proper, and requests trial by jury on all issues so triable.

## COUNT SEVEN
**Negligence Claims Against Armor Correctional Health Services, Inc.,
under Florida State Law**

109.   Plaintiff Cooper restates the allegations set forth at paragraphs 1 through 35 as if fully set forth here.

110.   At all material times, Defendant Armor owed the Plaintiff a duty to provide him with his walker, hearing/communication access, and his operating cochlear implant.

111.   At all materials times, Defendant Armor, by and through its agents or employees, breached its duty to give the Plaintiff his walker and to give him his operating cochlear implant.

112.   At all material times, Defendant Armor, by and through its agents or employees, were aware that it had a duty to provide the Plaintiff with his walker and his operating cochlear implant and also was that the Plaintiff was being harmed as a result of being denied his walker and his operating cochlear implant.

113.   As a direct and proximate result of the negligence of Defendant Armor, Plaintiff was caused to suffer physical pain, infection and eventual surgical amputation of his lower left leg, joint damage, extreme mental anguish and depression.

WHEREFORE, the Plaintiff Russell Hugh Cooper demands compensatory and punitive damages against Defendant Armor Correctional Health Services, Inc., costs, and trial by jury for all issues so triable.

**COUNT EIGHT**
**Claim Against Ric L. Bradshaw, under 42 U.S.C. § 1983,**
**for violations of Due Process Protections**
**in the Fourteenth Amendment to the U.S. Constitution**

114.    Plaintiff Cooper restates the allegations set forth at paragraphs 1 through 35, 64 through 75, 89 and 90 as if fully set forth here.

115.    Plaintiff sues Defendant Ric L. Bradshaw in his official capacity as Sheriff of Palm Beach County, Florida, for violating Plaintiff's rights to Due Process under the Fourteenth Amendment.

116.    The acts and failures to act of Bradshaw, through his agents and employees, evince the existence of customs or policies that resulted in deliberate indifference to Plaintiff's constitutional rights and amounted to punishment in violation of the Due Process under the Fourteenth Amendment, for which 42 U.S.C. §1983 provides a remedy.

117.    Those customs or policies include:

    a.    exposing Plaintiff or all inmates housed at the Main Detention Center to infectious pathogens,  including MRSA, stemming from inadequate cleaning and disinfection of the facilities,

    b.    depriving Plaintiff or all mobility-impaired inmates of their walkers or wheelchairs, leaving Plaintiff or other inmates to crawl or pull their bodies along the inadequately-cleaned floors,

c.   acceptance and tacit authorization of Armor's substandard healthcare services to inmates housed at the Main Detention Center,

d.   failing to provide Plaintiff, or all hearing-impaired inmates housed at the Main Detention Center, with auditory care or assistive services.

118.   Taken together or standing alone, those customs or policies demonstrate Defendant Bradshaw's deliberate indifference to Plaintiff's Due Process rights to be free of treatment that amounts to punishment.

119.   As a direct and proximate result of the actions, inactions, customs, or policies described above, Plaintiff suffered infliction of inhumane conditions of confinement, physical pain, infection and eventual surgical amputation of his lower left leg, joint damage, extreme mental anguish and depression.

WHEREFORE, Plaintiff, Russell Hugh Cooper, demands compensatory damages against Defendant Ric L. Bradshaw, together with attorney fees and costs, and trial by jury for all issues so triable.

**COUNT NINE**
**Claim Against Ric L. Bradshaw for violations of the**
**Americans with Disabilities Act and Rehabilitation Act**

120.   Plaintiff Cooper restates the allegations set forth at paragraphs 1 through 35, and 116 through 118 as if fully set forth here.

121.    Plaintiff sues Defendant Ric L. Bradshaw in his official capacity as Sheriff of Palm Beach County, Florida, for violating his rights under the Americans with Disabilities Act (ADA) and Rehabilitation Act.

122.    The Federal Rehabilitation Act prohibits discrimination against an individual based on disability by an program or entity receiving federal funds. 29 U.S.C. §§ 794(a) and (b)(2)(B).

123.    Title II of the ADA prohibits disability-based discrimination by any public entity. 42 U.S.C. §§ 12131-12132.

124.    These disability anti-discrimination laws impost an affirmative duty on public entities to create policies or procedures to prevent discrimination based on disability.

125.    Plaintiff is, and was at the relevant times, a person with a disability within the meaning of Title II of the ADA and the Rehabilitation Act.

126.    Defendant Bradshaw oversees and is responsible for a program or entity which receives federal financial assistance.

127.    The Palm Beach County Sheriff's Office, over which Defendant Bradshaw is the chief official, constitutes a public entity as defined by Title II of the ADA.

128.    The Main Detention Center, which is controlled by Defendant Bradshaw, is a facility and its operation comprises a program and services for purposes of Title II of the ADA and the Rehabilitation Act.

129.    During his time of pre-trial detention, Plaintiff was qualified to participate in or receive the benefit of Bradshaw's services, programs, or activities.

130.    Plaintiff was abused and neglected because of his hearing and mobility disabilities by Bradshaw's agents and employees at the Palm Beach County Main Detention Center. Such abuse and neglect constitutes discrimination against an individual based on his disabilities in violation of Title II of the ADA and the Rehabilitation Act.

131.    This abuse and neglect denied Plaintiff the benefits of the services, programs, or activities at the Main Detention Facility in violation of Title II of the ADA and the Rehabilitation Act.

132.    This abuse and neglect was carried out by Bradshaw's agents and employees at the Main Detention Center while acting within the scope of their employment by Bradshaw and the Palm Beach County Sheriff's Office. Defendant Bradshaw is liable for the actions and inactions of its agents and employees when they violated Title II of the ADA and the Rehabilitation Act.

133.    Bradshaw discriminated against Plaintiff by failing to provide a non-abusive, safe environment, by failing to provide him with auditory care, and by failing to provide him with means to ambulate so that he would not have to crawl on the jail cell floor.

134.    Plaintiff was severely harmed as a result of Bradshaw's discrimination.

135.   Plaintiff seeks award of compensatory damages against this Defendant, and recovery of reasonable attorney fees per 42 U.S.C. § 12205 and 29 U.S.C. § 794.

WHEREFORE, Plaintiff Russell Hugh Cooper requests judgment against Defendant Ric L. Bradshaw, for compensatory damages, attorney's fees and costs, any other and further relief that the Court deems just and proper, and requests trial by jury on all issues so triable

### COUNT TEN
### Negligence Claims Against Ric L. Bradshaw
### under Florida State Law

136.   Plaintiff Cooper restates the allegations set forth at paragraphs 1 through 35 as if fully set forth here.

137.   Plaintiff sues Defendant Ric L. Bradshaw in his official capacity as Sheriff of Palm Beach County, Florida.

138.   At all material times, Defendant Bradshaw owed the Plaintiff duties to provide him with his walker, auditory care and services, and sufficiently clean living conditions that would not expose him to pathogens such as MRSA.

139.   At all materials times, Defendant Bradshaw, by and through his agents or employees, breached these duties by depriving Plaintiff of his walker upon his incarceration at the Main Detention Facility and not returning it to him or providing a replacement until his release from custody, by failing to provide for auditory care and services, and by failing to provide sufficiently clean living conditions.

140.    As a direct and proximate result of the negligence of Defendant Bradshaw, Plaintiff suffered physical pain, infection and eventual surgical amputation of his lower left leg, joint damage, extreme mental anguish and depression.

WHEREFORE, the Plaintiff Russell Hugh Cooper demands compensatory damages against Defendant Ric L. Bradshaw, costs, and trial by jury for all issues so triable.

Dated: April 30, 2018                              Respectfully submitted,

                                                   W. Craig Lawson, P.A.
                                                   Attorney for the Defendant
                                                   1880 N. Congress Ave., Suite 200
                                                   Boynton Beach, FL 33426
                                                   (561)374 8624
                                                   craig@craiglawsonlaw.com

                                                   By:    */s/ W. Craig Lawson*
                                                          W. Craig Lawson
                                                          FBN: 79103